**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Lance Phillip Wickner,

      Plaintiff,

v.

Mary McComb, all sued in their
individual capacities; Jeanne Michels,
all sued in their individual capacities;
Mark Ehlenz, all sued in their individual
capacities; and Stephanie NLN, State
Law Librarian, all sued in their
individual capacities;

      Defendants.

Civ. No. 09-966 (DWF/JJK)

**REPORT AND
RECOMMENDATION**

Lance Phillip Wickner, 204147, MCF-OPH, 5329 Osgood Ave. N., Stillwater, MN 55082, pro se.

Margaret E. Jacot, Esq., Minnesota Attorney General's Office, counsel for Defendants Mary McComb, Jeanne Michels, and Mark Ehlenz.

John S. Garry, Esq., Minnesota Attorney General's Officer, counsel for Defendant Stephanie NLN, State Law Librarian.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before this Court on Defendant Stephanie NLN's Motion to Dismiss (Doc. No. 13). The case has been referred to this Court for Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Defendant Stephanie

NLN's motion be denied.

**BACKGROUND**

This is a *pro se* action brought under 42 U.S.C. § 1983 by Plaintiff Lance Phillip Wickner, a Native American inmate housed in a segregation unit at Oak Park Heights. According to the Proposed Second Amended Complaint, Plaintiff is being housed in "Administrative Control Unit (A.C.U.) Segregation" in Oak Park Heights. (Doc. No. 18, Attach.1 ("Proposed Sec. Am. Compl.") at ¶ 6.)

Plaintiff is a member the Leech Lake Band of Ojibwe and subscribes to the tribe's monthly publication named "DeBahJiMon," which Plaintiff says is "a legal and political publication" that "publish[es] articles about the government of the Leech Lake Band of Ojibwe." (*Id.* at ¶ 11, 24; Doc. No. 9, Am. Compl. ¶ 10.)[1] Plaintiff asserts that the various individual Defendants have refused to allow him to receive DeBahJiMon in his cell, where he lives in segregation. Instead, the

---

[1] A court may consider some information that is not contained within a complaint—such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings—without transforming a motion to dismiss into one for summary judgment. *See Enervations, Inc. v. Minn. Mining and Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004); *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). DeBahJiMon is a free publication of the Leech Lake Band of Ojibwe. It is a monthly publication of the tribe and includes a variety of information about the life of the Leech Lake community. For example, the lead story in the December 2009 issue dealt with a report about how tribal engineering would soon complete a water treatment facility. The issue also included messages from the Department of Interior about H1N1, articles about hunting in the Chippewa National Forest and about the environmental cleanup of brownfield sites, and various community-meeting notices.

staff at Oak Park Heights has put Plaintiff's subscribed copies of the publications that come through the mail "in a storage locker until his [prison expiration date] August 19, 2011." (Proposed Sec. Am. Compl at ¶ 14; Am. Compl. ¶ 13.)

Although his subscribed copies of this periodical were not made available to him, Plaintiff asserts that for five months he was receiving DeBahJiMon in his cell because it was being provided to him by the state law librarian. However, according to Plaintiff's allegations, the individual who held the position of law librarian was thereafter replaced by Defendant Stephanie Thorson,[2] who immediately discontinued providing Plaintiff with copies of DeBahJiMon through the state law library. Defendant Thorson, according to Plaintiff, told him that DeBahJiMon "wasn't a legal publication." (Proposed Sec. Am. Compl. ¶ 21; see also Am. Compl. ¶ 15 ("Defendant Stephanie told plaintiff that the publication wasn't legal").) Plaintiff contends that Defendant Thorson provides other similar publications about government—like Minnesota Law & Politics and Session Weekly—to the segregated unit, but that these other publications are about the government of Minnesota not Native American Tribal Government, thus showing a "facially discriminative purpose." (Proposed Sec. Am. Compl. ¶ 25; Am. Compl.

---

[2] Because neither Plaintiff's Complaint or Amended Complaint referred to Defendant Stephanie by a last name, the Clerk's Office referred to this Defendant as Stephanie "NLN" (i.e., no last name), in the caption of this case. Defendant now seeks to amend his Complaint to add, among other things, Defendant's last name, Thorson. If this Report and Recommendation is adopted, the caption should be amended to reflect that Defendant Stephanie's last name is Thorson, and "NLN" should be removed.

¶ 20.)

Plaintiff contends that Defendants have violated his constitutional rights protected by the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Defendants Mary McComb, Jeanne Michels, and Mark Ehlenz, employees of the Minnesota Department of Corrections ("DOC Defendants"), have answered the Amended Complaint and have denied liability. They assert that they are not responsible for any decision made by the state law librarian to refuse to provide Plaintiff with copies of DeBahJiMon since the state law librarian is not a DOC employee and is not under the supervision of the DOC. (Doc. No. 10, DOC Defendants' Answer ("DOC Defs.' Ans.") ¶ 3.) They also assert that inmates, like Plaintiff, serving disciplinary-segregation sentences at Oak Park Heights "may receive only subscribed legal or legislative publications[,] or photocopies of articles from such publications[,]" and that although Plaintiff received DeBahJiMon through the mail in the past, he is not entitled to have copies of it in his segregation cell because "it is not a subscribed legal or legislative publication." (*Id.* ¶¶ 12,13.) DOC policy, they assert, "does not permit inmates serving disciplinary[-]segregation sentences to receive political publications." (*Id.* ¶ 14.) The DOC Defendants raise, and of course preserve, numerous defenses including, for example, legal immunity, failure to exhaust administrative remedies, and failure to state a claim cognizable at law. (See *id.* at 6-7.)

## DISCUSSION

**I.      Standard of Review**

Defendant Thorson moves to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6).[3]  Since this Court's recommendation rests entirely on the pleadings, materials within the public record, and materials that are necessarily embraced by the pleadings, this Court analyzes Defendants' motions under the framework of Rule 12(b)(6), and not under Rule 56.

A civil complaint will be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must allege facts, which if true, state a claim as a matter of law").  Complaints under § 1983 are governed by the "notice pleading" standard established by the Federal Rules of Civil Procedure.  *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (noting that a prisoner's complaint asserting Eighth Amendment medical treatment claim satisfied the notice pleading standard); *see also Kikumura v.*

---

[3]      The Amended Complaint described Defendant Thorson only as "Defendant Stephanie," "a Law Librarian employed at the Minnesota State Law Library."  (Am. Compl. ¶ 4.)  Plaintiff contends that "Stephanie (no known Last name) Defendant, has refused to provide DeBahJiMon through the Minnesota State Law Library."  (*Id.* ¶ 14.)  Defendant Thorson responded to the Amended Complaint by filing this motion.

5

*Osagie*, 461 F.3d 1269, 1294 (10th Cir. 2006) (noting that for a prisoner's Eighth Amendment deliberate indifference medical treatment claim to survive a motion to dismiss the plaintiff "is merely required to provide 'a short and plain statement'" of the claim); *Njaka v. Wright County*, 560 F. Supp. 2d 746, 751 (D. Minn. 2008) (applying the "liberal system of 'notice pleading' set up by the Federal Rules" to a complaint under § 1983). Federal Rules of Civil Procedure 8(a) provides that the complaint must set forth "(1) a short and plain statement of the grounds on which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Although Federal Rule of Civil Procedure 9 requires that certain issues be pled "with particularity" (e.g., fraud and mistake), it does not generally apply to § 1983 claims.

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to

dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp.*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 545. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). However, even a *pro se* complaint must allege facts, and not just bare, unsupported, legal conclusions. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[a]lthough it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions"); *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) ("[a]t the very least . . . the complaint must contain facts which state a claim as a matter of law and must not be conclusory")

(emphasis added).

## II. Analysis

Defendant Thorson first argues that Plaintiff lacks standing, and thus fails to state a claim, "if he means to assert the denial of an inmate's First Amendment right to receive requested legal material so he can access the courts." (Doc. No. 14, Mem. of Law in Supp. of Mot. to Dismiss of Def. Stephanie Thorson ("Thorson Mem.") 4.) Thus, Defendant Thorson asserts that unless Plaintiff can show that Defendant Thorson deprived him of a specific opportunity to advance a viable legal claim or defense in a particular action by denying him access to DeBahJiMon, he would not have standing to bring his claim.[4]

This argument misconstrues the nature of the harm alleged. Plaintiff does not claim that he needs access to the publication DeBahJiMon so that he can have meaningful access to the courts. Although it is certainly true that "[p]risoners have a constitutional right of access to the courts" and this access to the court must be "adequate, effective, and meaningful," *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977), that is not the constitutional right at issue here, where

---

[4] In the Amended Complaint, Plaintiff describes his First Amendment claim as a "right to freedom of the press." (Am. Compl. ¶ 21.) He changes his description in his Proposed Second Amended Complaint, clarifying that his First Amendment claim is that he has been denied "the right to receive information." (Proposed Sec. Am. Compl. ¶ 26.) In her reply, Defendant Thorson acknowledges that Plaintiff's First Amendment claim is not in fact based on freedom of the press. However, it is not clear whether Defendant Thorson has abandoned her argument or is still asserting that Plaintiff would nevertheless have to show that Plaintiff has been denied access to the courts. Therefore, this
(Footnote Continued on Next Page)

the Plaintiff is seeking vindication for the alleged violation of his First Amendment right to receive information, such as information of a political, social, or legal nature, separate and apart from any legal material he might need to access the courts. Thus, the fact that Plaintiff has not specifically alleged how the failure to receive the tribal publication DeBahJiMon has prevented him from accessing the courts does not bar his claim.

Defendant Thorson next argues that even if Plaintiff's claim is construed as a First Amendment claim asserting the denial of a general right to receive information, such a claim is viable only against the DOC Defendants. She asserts that such a claim is not viable against a state law librarian because DeBahJiMon is prohibited in segregated cells by DOC policy. Thus, Defendant Thorson argues that she did not cause the purported First Amendment violation.

At this stage of the litigation, this Court concludes that the pleadings do not support dismissal for failure to state a claim. The Amended Complaint alleges that for five months the state law librarian was sending the publication DeBahJiMon to Plaintiff, but when Defendant Thorson took over the law-librarian job she told Plaintiff that this publication "wasn't legal" and discontinued sending it to him. (Am. Compl. ¶¶ 15, 17, 19.) Although Defendant Thorson argues, in support of the motion to dismiss, that she was on notice that prison officials had determined that DeBahJiMon is "not a legal publication and therefore is

---

(Footnote Continued from Previous Page)
Court addresses that argument here.

9

prohibited in segregation cells under DOC policy," (Doc. No. 22, Reply Mem. of Law in Supp. of Mot. to Dismiss ("Reply Mem.") 2), the DOC Defendants assert that they are not responsible for the state law librarian's decision to not send DeBahJiMon to Plaintiff. (DOC Defs.' Ans. ¶ 3.) There is thus, at a minimum, a fact dispute about who is responsible for the decision to withhold the library's copy of the publication from the Plaintiff. And, this Court does not have before it a copy of the DOC policy, if any, which purportedly governs this matter. Holding that the state law librarian cannot be held liable for the putative violation of Plaintiff's First Amendment rights would require this Court to make assumptions on factual determinations that cannot be made in the context of a motion to dismiss for failure to state a claim. For example, at this point, this Court does not know who actually made the decision that DeBahJiMon was not a legal or legislative publication, the allocation of responsibility and authority between the DOC and the state law library, the scope and detail of the DOC policy in issue, or the justification for withholding such a publication from prisoners in segregation.

For the purposes of this motion, this Court must assume that Plaintiff's allegations are true, that the publication was kept from Plaintiff, that Plaintiff has a constitutionally protected right of access to that publication, and that the publication was kept from Plaintiff for a racially discriminative purpose. At this stage, this Court cannot conclude that there was a fair application of an otherwise constitutionally valid policy or that certain Defendants should not be

held accountable. Plaintiff claims that his constitutional right to access printed material—in this case the Leech Lake Band of Ojibwe's monthly publication DeBahJiMon—was unduly restricted by the DOC Defendants and the state law librarian. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Prison regulations that restrict an inmate's access to publications are valid under the Constitution if they are "reasonably related to legitimate penological interests." *Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989)); *see also Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999) (same). Whoever made the decision to deny Plaintiff access to the law library's DeBahJiMon, whether it was the state law librarian or the DOC officials, will be obligated to proffer a legitimate reason for any such decision to deny access. *See Cooper*, 189 F.3d at 784 ("Given Cooper's allegation that he was denied all magazines as well as copies of other specific publications, we believe the prison would be obligated to proffer a legitimate reason for any decision to deny Cooper access to these materials."). However, for purposes of deciding the motion presently before the Court, this Court concludes that Plaintiff's claim that law librarian Stephanie Thorson denied the printed material-in-issue to Plaintiff is sufficiently specific to state a § 1983 claim for actions taken directly by her. *See id.* (concluding plaintiff's claim was

sufficiently specific).

Defendant Thorson's final argument is that Plaintiff's equal protection claim should be dismissed because "[t]here is simply nothing in the amended complaint alleging that Thorson treats other similarly situated inmates more favorably than Wickner with respect to sending materials from the State law Library." (Thorson Mem. 7.) Plaintiff's equal protection claim, however, is based on the different way the state law library allegedly treats Native-American publications, such as DeBahJiMon, which allegedly have political and legal content, from other publications, such as Minnesota Law and Politics and Session Weekly, which allegedly have similar content. Construing the *pro se* Amended Complaint liberally, it is reasonable to construe the Amended Complaint as claiming that Native American prisoners—who would more likely be those prisoners with a keen interest in reading tribal-government-news publications—are being treated less favorably than non-Native American prisoners in their access to political and/or legal publications. Of course, the allegation of a disparity in treatment is just that – an allegation, and it constitutes only one element that must be proven in order to substantiate a constitutional equal protection violation. Here, this Court offers no opinion regarding the strength of Plaintiff's claim or the likelihood that such a claim would survive summary judgment or prevail at trial. But, in the context of this motion to dismiss, applying the plausibility test called for by *Twombly*, the Amended Complaint at least states a claim for relief and Defendant

Thorson's motion to dismiss on this ground should be denied.

### III.    Second Motion to Amend

Plaintiff has moved to file a Second Amended Complaint.  (Doc. No. 18.) The DOC Defendants, Mary McComb, Jeanne Michels, and Mark Ehlenz, have filed a letter stating that they do not oppose this motion.  (Doc. No. 20.)  The Second Amended Complaint does not change in any material way the claims in this case, but merely revises some of the factual allegations and adds Defendant Stephanie Thorson's last name to the caption and text.  Defendant Thorson has addressed the Second Amended Complaint in her Reply Memorandum supporting her motion to dismiss for failure to state a claim, arguing that the Second Amended Complaint, like its predecessor, fails to state a claim for the same reasons.  Because this Court recommends that Defendant Thorson's motion to dismiss should be denied, this Court recommends that Plaintiff's motion for leave to file the Second Amended Complaint should be granted.

## RECOMMENDATION

Based on the above, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendant State Law Librarian Stephanie Thorson's Motion to Dismiss (Doc. No. 13), be **DENIED**;

2.    Plaintiff's Second Motion to Amend Complaint (Doc. No. 18), be **GRANTED**;

3. The Clerk's Office be directed to file the proposed Second Amended Complaint for Violation of Civil Rights 42 U.S.C. 1983 in the form currently attached to Plaintiff's Second Motion to Amend Complaint (Doc. No. 18, Attach. 1), as the Second Amended Complaint in this matter in a separate docket entry; and

4. Defendants be directed to answer or otherwise respond to the Second Amended Complaint for Violation of Civil Rights 42 U.S.C. 1983, within 20 days of the District Court's Order adopting this Report and Recommendation.

Date: January 22, 2010

                                         *s/ Jeffrey J. Keyes*
                                         JEFFREY J. KEYES
                                         United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 5, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.