# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Lance Phillip Wickner,

        Plaintiff,

v.

Stephanie Thorson and Susan
Trombley, both sued in their official and
individual capacities,

        Defendants.

Civ. No. 09-966 (DWF/JJK)

**REPORT AND
RECOMMENDATION**

---

Lance Phillip Wickner, 204147, MCF-OPH, 5329 Osgood Ave. N., Stillwater, MN
55082, *pro se.*

John S. Garry, Minnesota Attorney General's Office, counsel for Defendants
Stephanie Thorson and Susan Trombley.

---

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before this Court on the Third Amended Complaint of Lance

Phillip Wickner for "violation of civil rights under 42 U.S.C. 1983." (Doc. No. 34.)

The parties have cross-moved for summary judgment. (Doc. Nos. 36 & 43.) The

case has been referred to this Court for a Report and Recommendation under

28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons discussed below,

this Court recommends that Defendants' summary-judgment motion be granted,

that Plaintiff's summary-judgment motion be denied, and that this case be

dismissed with prejudice.

# BACKGROUND

Plaintiff is incarcerated at the Minnesota State Prison at Oak Park Heights. Due to his repeated violations of inmate regulations, Plaintiff has been housed in disciplinary segregation since July 30, 2007. (Doc. No. 39, Aff. of Mary McComb ("McComb Aff.") ¶ 2.)

Inmates who are in disciplinary segregation at Oak Park Heights are subject to Department of Corrections Policy 301.083, which restricts the types of publications an inmate may have in his cell in segregation. (*Id.* ¶ 2, Ex. A.) Under this DOC policy, legal or legislative publications (or copies of articles from such publications) are the only types of publications that inmates in segregation are allowed to have in their cells. (*Id.* ¶ 3.)

Inmates at Oak Park Heights have access to the Minnesota State law library through a state program called the Law Library Service to Prisoners ("LLSP"), which operates through an inter-agency agreement with the DOC. (Doc. No. 38, Aff. of Daniel Lunde ("Lunde Aff.") ¶¶ 1-2, Exs. A-B.) Under this program, the DOC pays for the LLSP to provide law-library services to DOC inmates at the various prison facilities where they are housed. (*Id.* ¶ 2.) The LLSP staff consists of two full-time librarians, one half-time librarian, and one part-time clerk. (*Id.* ¶ 3.) Defendants Susan Trombley and Stephanie Thorson are employed as librarians on the LLSP staff. (*Id.* ¶¶ 4, 6.) Defendant Trombley is the LLSP half-time librarian and Defendant Thorson is one of the LLSP's full-

time librarians.  (Doc. No. 40, Aff. of Stephanie Thorson ("Thorson Aff.") ¶ 1; Doc. No. 41, Aff. of Susan Trombley ("Trombley Aff.") ¶ 1.)

As LLSP librarians, the responsibilities of Defendants Trombley and Thorson include providing copies of requested legal materials to DOC inmates. (Thorson Aff. ¶ 2; Trombley Aff. ¶ 2.)  In responding to the large number of requests from inmates that they receive on an ongoing basis, the Defendant librarians must comply with DOC policy, such as DOC Policy 301.083, which provides that the only publications that inmates in disciplinary segregation are allowed to have in their cells are legal or legislative publications.  (Thorson Aff. ¶ 2; Trombley Aff. ¶ 2; *see* McComb Aff. ¶ 3.)

Plaintiff is a frequent user of the LLSP program.  In the calendar year 2008, the LLSP provided Plaintiff 168 items, through a total of 23 mailings or deliveries, in response to his requests.  (Trombley Aff. ¶ 8.)  This high volume of requests by and responses to Plaintiff increased in 2009 and in 2010.  (*Id.*)  In response to Plaintiff's requests, the LLSP provided him 251 items in calendar year 2009, through a total of 36 mailings or deliveries, and 71 items in the first four months of 2010, through a total of 9 mailings or deliveries.  (*Id.*)[1]

In the period from September 2008 to January 2009, Plaintiff requested

---

[1]     Plaintiff, however, is not the only prisoner that the LLSP services.  In 2008, the LLSP provided 30,152 requested items to 1,891 different inmates and held 1,145 on-site meetings with inmates.  (Lunde Aff. ¶ 3, Ex. C.)  In 2009, the LLSP provided 30,191 requested items to 1,764 different inmates and held 1,085 on-site meetings with inmates.  (Lunde Aff. ¶ 3, Ex. D.)

copies of a monthly newspaper published by the Leech Lake Band of Ojibwe entitled *DeBahJiMon*. (Trombley Aff. ¶ 4.) At that time, Defendant Trombley, LLSP's half-time librarian, was filling Plaintiff's requests from the law library, and she filled his request for copies of the August through December 2008 issues of *DeBahJiMon* among the many items she provided to Plaintiff. (*Id.*) She did not check or consult with her supervisor or with Defendant Thorson, or the other full-time LLSP librarian, about whether *DeBahJiMon* qualified as the type of legal or legislative publication that could be provided to inmates in segregation at Oak Park Heights under the DOC Policy 301.083. (*See id.*)

In January 2009, Defendant Trombley went on maternity leave and Defendant Thorson took over her duties in supplying law-library materials to prisoners at Oak Park Heights. (Thorson Aff. ¶ 3.) In early February 2009, Plaintiff sent the LLSP two requests that included back issues of *DeBahJiMon*. (*Id.* ¶ 4, Ex. A.) In processing these requests, Defendant Thorson reviewed a few issues of *DeBahJiMon* on the website of the Leech Lake Band of Ojibwe. (*Id.* ¶ 6, Ex. B.) In her affidavit in support of Defendants' summary-judgment motion, she gives the following testimony:

> In processing Wickner's requests in early February 2009, I reviewed a few issues of DeBahJiMon on the website of the Leech Lake Band of Ojibwe. In my professional judgment as a law librarian, DeBahJiMon did not appear to be a legal publication, but rather was like a town or county general newspaper, with stories and notices about community events and local government, obituaries, and job postings.

(*Id.* ¶ 6.)

Defendant Thorson concluded that she should not send *DeBahJiMon* to Plaintiff because it was not a legal publication. (*Id.* ¶ 7.) Her supervisor at LLSP, Daniel Lunde, approved Defendant Thorson's determination not to send copies of *DeBahJiMon* to Plaintiff, and Lunde has testified that he believed that it was a reasonable exercise of Defendant Thorson's professional judgment as a librarian. (*Id.*; Lunde Aff. ¶ 4.)

Shortly thereafter on February 4, 2009, Defendant Thorson went to Oak Park Heights and met with Plaintiff. (Thorson Aff. ¶ 8.) She told him that *DeBahJiMon* did not appear to be a publication that the law library could provide him, and he should not have received it from the law library in the past. (*Id.*)

In late February 2009, Plaintiff sent a complaint letter to the Minnesota State law library about this decision not to send him *DeBahJiMon*, complaining that as a registered member of the Leech Lake Band of Ojibwe he should be able to receive the monthly newspaper. (*Id.* ¶ 9, Ex. C.) He argued that he receives quite a few publications from the state law library such as *Minnesota Law & Politics*, *Prison Legal News*, *Families Against Mandatory Minimums*, *Fortune News*, and *Session Weekly*, which, according to Plaintiff, are the same kind of publications as *DeBahJiMon*, covering legal and political issues. (*Id.*) He argued that the difference was that *DeBahJiMon* was a Native American publication. (*Id.*, Ex. C at 1-2.) He also stated, "I feel like I'm not getting this publication just

because it's about Native Americans.  Discrimination!"  (*Id.* at 1.)

After reviewing Plaintiff's complaint letter, Defendant Thorson tried to find another way to satisfy his request.  (Thorson Aff. ¶ 10.)  Defendant Thorson telephoned the Leech Lake Band, explained the situation, and obtained assurance that the Band would mail issues of *DeBahJiMon* to Plaintiff at Oak Park Heights for free if he requested copies or subscribed to it.  (*Id.*)  Her supervisor approved.  (*Id.*; Lunde Aff. ¶ 5.)  Defendant Thorson then informed Plaintiff that the Leech Lake Band of Ojibwe would place him on their mailing list for *DeBahJiMon* if he contacted the Band.  (Thorson Aff. ¶ 11, Ex. C.)  She enclosed the mailing address and website address for the Band so Plaintiff could contact the Band to have issues of *DeBahJiMon* mailed to him for free.  (*Id.*, Ex. C at 4.)

In April 2009, Defendant Trombley returned from maternity leave and resumed her responsibilities of filling Oak Park Heights inmate requests for materials from the law library.  (Trombley Aff. ¶ 6.)  Plaintiff made no further requests for *DeBahJiMon* from the time Trombley returned from maternity leave in April 2009 until mid-November 2009.  (*Id.*)  In mid-November 2009, Plaintiff asked for two recent issues of *DeBahJiMon* as part of a list of requested legal-research materials that he sent to the LLSP.  (*Id.* ¶ 7.)  When Trombley responded, she declined to include the requested copies of *DeBahJiMon*, stating the following in a cover letter: "[T]he State Law Library understands that DOC

officials have determined that under DOC policy you are not permitted to have issues of *DeBahJiMon* in your segregation cell." (*Id.* ¶ 7, Ex. A.) Trombley's supervisor approved this response before she sent it. (*Id.* ¶ 7; Lunde Aff. ¶ 6.)

Mary McComb, the Associate Warden at Oak Park Heights, testifies in her affidavit that the Leech Lake Band has been mailing Plaintiff *DeBahJiMon* since February or March 2009. (McComb Aff. ¶ 5.) However, the DOC staff at Oak Park Heights have not allowed Plaintiff to have issues of *DeBahJiMon* in his cell because it is not a legal or legislative publication and, thus, not allowed in segregation cells under DOC Policy 301.083. (*Id.*) As required by that policy, the issues of *DeBahJiMon* that Plaintiff has received in the mail have been placed by the DOC staff in Plaintiff's property storage bin. (*Id.* ¶¶ 3, 5.) They will be made available to Plaintiff when he completes his disciplinary segregation sentence and returns to the general prison population. (*Id.* ¶ 5.)

Assistant Warden McComb testifies that no inmate in disciplinary segregation is allowed to have *DeBahJiMon* in his cell, regardless of who sends it to him—the publisher, the state law library, or any other source. (*Id.* ¶ 7.) Upper level staff at Oak Park Heights were unaware that Plaintiff had received copies of *DeBahJiMon* from the state law library in 2008, and would not have allowed Plaintiff to keep them in his segregation cell if it was known that he was receiving it from the state law library with the other authorized legal publications he was receiving. (*Id.*)

Plaintiff now brings this § 1983 action against "Susan Trombley and Stephanie Thorson, both sued in their official and individual capacities." (Doc. No. 34, Third Amended Compl. ("TAC") 1.) He claims that the librarians violated his constitutional rights, including the "First Amendment right to receive information" and the right to "equal protection" under the Fourteenth Amendment. (*Id.* ¶¶ 24-25.) The relief he requests includes: (1) nominal damages of $1 for the First Amendment violation and the same amount for the Fourteenth Amendment violations; (2) an injunction ordering Defendants Trombley and Thorson "or their agents" to provide Plaintiff with *DeBahJiMon* in the future upon request; (3) punitive damages in the amount of $50,000 each against Defendants Trombley and Thorson for violation of Plaintiff's "First Amendment right to receive information"; and (4) punitive damages of $200,000 each against Defendants Trombley and Thorson for the violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at 4-5, Relief Requested ¶¶ 1-5.)

When Plaintiff initiated this lawsuit in October 2009, he also sued three DOC officials, including Assistant Warden Mary McComb, but he dropped the DOC officials from the lawsuit when he filed his Third Amended Complaint in April 2010. (Doc. No. 34.)

## DISCUSSION

## I.    Standard of Review

Summary judgment is proper when no genuine issue of material fact exists

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).  This Court must view the evidence, and any reasonable inferences

drawn therefrom, in the light most favorable to the nonmoving party.  *Enter. Bank*

*v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the

Supreme Court has stated, "[s]ummary judgment procedure is properly regarded

not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy, and

inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S.

317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that no genuine issue of

material fact remains and that judgment as a matter of law is proper.  *Enter.*

*Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of

specific facts in the record that create a genuine issue for trial.  *Krenik v. County*

*of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly

supported motion for summary judgment "may not rest upon mere allegations or

denials of his pleading, but must set forth specific facts showing that there is a

genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986).

**II.     Overview**

At the outset it is important to note what Plaintiff does not claim.  In this

case, Plaintiff does not claim that the DOC Policy that restricts the publications

that inmates in disciplinary segregation can have in their cells to legal and legislative publications is unconstitutional.[2]  The crux of Plaintiff's § 1983 claim against the two Defendant librarians is that each violated his constitutional rights under the First Amendment and the Equal Protection clause of the Fourteenth Amendment by denying him copies of *DeBahJiMon*.  With respect to Defendant Thorson, she allegedly violated Plaintiff's constitutional rights in February 2009, by determining that *DeBahJiMon* was not a qualified legal or legislative publication that the law librarians could supply to Plaintiff.  Defendant Trombley allegedly violated Plaintiff's constitutional rights in November 2009, when she refused to supply him with copies of *DeBahJiMon* because the DOC had determined that Plaintiff was not permitted to have *DeBahJiMon* in his cell.

This Court also notes that Plaintiff has access to—and has taken great advantage of—a wide variety of law-library services while serving his time in segregation.  As described above, Plaintiff is a frequent user of the law-library services.  Beginning in 2008, Plaintiff has received almost 500 items through the law-library services.  However, DOC policy prohibits inmates in segregation from

---

[2]    Plaintiff currently has another suit pending in this District in which he claims that the DOC policy restricting the reading materials prisoners in segregation are allowed to possess is, itself, unconstitutional.  That suit is against other DOC employees at the Oak Park Heights facility in their individual and official capacities.  In that case, Plaintiff has argued that segregated prisoners should have the same access to reading materials as do members of the general population.  On July 22, 2010, this Court recommended that the defendants in this separate action be granted summary judgment on all of Plaintiff's claims.  *See Wickner v. Symmes, et al.*, Civ. No. 09-940 (DWF/JJK) (Report and

(Footnote Continued on Next Page)

having general reading material in their cells, such as newspapers, magazines, educational materials, and the like.  Although inmates in general population may have access to this sort of general reading material in their cells, inmates in disciplinary segregation are allowed to receive only publications that are legal or legislative in nature.  These types of materials are permissible "because the DOC is under an obligation to allow inmates to have access to the courts."  (McComb Aff. ¶ 3.)

## III.    Individual-Capacity Claims

### A.    First Amendment Claim

Plaintiff claims that Defendants' determination that *DeBahJiMon* is not a legal or legislative publication, and therefore not allowable in disciplinary segregation, unconstitutionally infringes on his First Amendment right to receive information through the mail.  Defendants argue that they are entitled to qualified immunity on this claim because the decision not to forward *DeBahJiMon* to Plaintiff was not a constitutional violation, and, even if it had been, the right to receive a publication such as *DeBahJiMon* was not so clearly established that a reasonable official would have known that withholding it was unlawful.

Qualified immunity protects government officials from liability under § 1983 when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Hope v. Pelzer*, 536

(Footnote Continued from Previous Page)
Recommendation of July 22, 2010) (Doc. No. 73).

U.S. 730, 739 (2002).  The qualified-immunity inquiry involves "two questions:
'(1) whether the facts alleged or shown, construed in the light most favorable to
[the plaintiffs], establish a violation of a constitutional . . . right, and (2) whether
the constitutional right was clearly established as of [the time of the relevant
conduct], such that a reasonable official would have known that his actions were
unlawful.'"  *Langford v. Norris*, __ F.3d __, 2010 WL 2813551, at *9 (8th Cir. July
20, 2010) (alterations and elisions in original) (quoting *Krout v. Goemmer*, 583
F.3d 557, 564 (8th Cir. 2009)).  If no reasonable fact-finder could answer yes to
both of these questions, the official is entitled to qualified immunity.  *See
Plemmons v. Roberts*, 439 F.3d 818, 822 (8th Cir. 2006).

      With respect to the first component of the qualified-immunity analysis, this
Court concludes that, even taking the evidence in the light most favorable to
Plaintiff, no reasonable fact-finder could conclude that either Defendant Thorson
or Defendant Trombley violated one of Plaintiff's constitutional rights.  First, to the
extent Plaintiff claims that the constitutional violation arose out of Defendants'
alleged misinterpretation of the policy restricting inmate reading material in the
segregation unit to "legal and legislative publications," such a claim must fail.  A
prison official cannot be held liable in a § 1983 action solely for failure to follow
the prison's own regulations.  *Bonner v. Fed. Bureau of Prisons*, 196 F. App'x
447, 448 (8th Cir. 2006); *see also Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir.
2003) ("[T]here is no federal constitutional liberty interest in having state officers

follow state law or prison officials follow prison regulations"). No reasonable jury could conclude that the facts alleged establish a constitutional violation on this theory. Thus, Defendants should be entitled to qualified immunity.

Second, to the extent that Plaintiff claims that the librarian Defendants' decisions violate his right of access to the courts, such a claim must also fail. To succeed in an access-to-courts claim under § 1983, a prisoner must demonstrate that a non-frivolous claim has been frustrated or impeded and that he has suffered actual injury. *Hartsfield v. Nichols*, 511 F.3d 826, 831-32 (8th Cir. 2008). A denial of access to the courts without cognizable injury is insufficient to support a claim under § 1983. *Sabers v. Delano*, 100 F.3d 82, 83 (8th Cir. 1996) (per curiam). Plaintiff has offered no proof that Defendants' determination that *DeBahJiMon* is not a legal or legislative publication, and therefore unallowable in disciplinary segregation, has had a negative effect, or any impact whatsoever, on any claim that Plaintiff has filed or has caused Plaintiff actual harm. Thus, no reasonable fact-finder could conclude that the facts as alleged could establish a constitutional violation on this theory.

To the extent that Plaintiff is asserting an as-applied challenge to the regulation, several courts of appeals have held that "[t]he *Turner* [*v. Safley*, 482 U.S. 78, 93 (1987)] analysis applies equally to facial and 'as applied' challenges." *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004); *United States v. Reid*, 369 F.3d 619, 626 (1st Cir. 2004) (citing *Thornburgh* and *Turner* in

discussing an "as-applied challenge" under the First Amendment); *Flagner v. Wilkinson*, 241 F.3d 475, 484 n.5 (6th Cir. 2001) ("Under *Turner*, [a] plaintiff[] may pursue as-applied challenges to facially valid prison regulations."); *see also Lindell v. Huilbregtse*, 205 F. App'x 446, 448-49 (7th Cir. 2006) (noting, in the context of an "as-applied" free-speech claim, that under the First Amendment, prison officials may restrict correspondence between inmates and citing *Turner*). Under *Turner*, restrictions on an inmate's First Amendment rights are permissible if they are reasonably related to legitimate penological objectives.[3] *Turner*, 482 U.S. at 93. Because of this deferential standard, at the summary-judgment stage, the issue with an as-applied challenge is whether there is a genuine dispute regarding the legitimacy of prison officials' reasons to apply the governing regulation in the particular circumstances of the prisoner's case. *See Hargis v. Foster*, 312 F.3d 404, 410-11 (9th Cir. 2002) (considering whether a jury could reasonably conclude that prison officials acted unreasonably in applying a policy prohibiting certain coercive communications with prison officials to an inmate's statements allegedly intended to coerce an officer into not enforcing a prison rule). Thus, to the extent Plaintiff raises an as-applied

---

[3]     Under *Turner*, to determine whether, on its face, a regulation has a reasonable relationship to a legitimate penological objective, a court considers four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate interest asserted to justify it; (2) whether there are alternative means of exercising the right that remain available to inmates; (3) the extent to which accommodating the asserted right will impact guards and other inmates, as well as allocation of prison resources; and (4) whether there are

(Footnote Continued on Next Page)

challenge to Defendants' decision not to forward *DaBahJiMon*, the constitutional question is whether a reasonable jury could conclude that the librarians unreasonably applied the regulation at issue. *Clark v. Mason*, No. C04-1647-JCC, 2007 WL 2417154, at *2-3 (W.D. Wash. Aug. 20, 2007) (applying summary-judgment standard to an "as-applied" challenge to a prison regulation regarding inmate possession of sexually explicit artwork and asking whether prison officials had legitimate reason to apply the governing regulations).

This Court determines that no reasonable jury could conclude that the facts as alleged could establish a constitutional violation on this theory. As Associate Warden McComb described, the policy behind allowing inmates in segregation access to only legal and legislative publications is that such a restriction is necessary to ensure that disciplinary segregation is unpleasant to deter inmate misconduct. (McComb Aff. ¶¶ 3 & 4.) And Defendant Thorson explained that the reason she refused to forward *DeBahJiMon* was that it did not appear to be a legal publication, but resembled more closely a town or county general newspaper, with stories and notices about community events and local government, obituaries, and job postings. (Thorson Aff. ¶ 6.) Consistent with that interpretation, Defendant Trombley informed Plaintiff that she would not be forwarding him *DeBahJiMon* based on her understanding that the DOC did not consider it to be allowable for inmates in segregation. (Trombley Aff. ¶ 7.) In

_____

(Footnote Continued from Previous Page)
ready alternatives to the regulation at issue. *See Turner*, 482 U.S. at 89-91.

light of the undisputedly legitimate penological interest in limiting inmate access to legal and legislative publications while they are in segregation—i.e., to deter misconduct by making segregation unpleasant—no reasonable fact-finder could conclude that Defendants unreasonably applied the regulation at issue in this particular case. Plainly, the decision not to allow inmates in segregation to have access to a local newspaper of general thematic scope furthers that objective. And Defendants' characterization of *DeBahJiMon* as such a general-interest, local newspaper does not flatly contradict the nature of the February 2009 issue of the *DeBahJiMon* publication provided for this Court's review (*see* Thorson Aff. ¶ 6, Attach. 3, Ex. B). *See Clark*, 2007 WL 2417154, at *3 (granting prison officials' motion for summary judgment on an inmate's as-applied challenge to the seizure of sexually explicit artwork because the officials' description of the artwork did not flatly contradict the nature of the evidence). As a result, no reasonable fact-finder could conclude that Defendants altogether lacked a legitimate reason to determine that *DeBahJiMon* was not a legal or legislative publication under DOC Policy 301.083, so there could be no finding of a constitutional violation. Defendants are, therefore, entitled to qualified immunity on this claim.

### B.   Fourteenth Amendment

Plaintiff claims that the Defendants' denying him access to *DeBahJiMon* deprived him of his rights under the Equal Protection Clause of the Fourteenth

Amendment.  Defendants also seek qualified immunity on this claim, arguing that no reasonable fact-finder could conclude, based on the evidence presented here, that there was a violation of this constitutional provision, and that any constitutional right to receive a publication like *DeBahJiMon* was not so clearly established that a reasonable officer would have known that refusing to forward it to Plaintiff was unlawful.

As noted above, the qualified-immunity inquiry asks whether the facts shown, construed in the light most favorable to the plaintiff, could establish a violation of a constitutional right, and whether that constitutional right was clearly established at the time of the relevant conduct, such that a reasonable official would have known that his actions were unlawful.  *Langford*, 2010 WL 2813551, at *9.  If no reasonable fact-finder could answer yes to both of these questions, the official is entitled to qualified immunity.  *See Plemmons*, 439 F.3d at 822.

"The Equal Protection Clause generally requires the government to treat similarly situated people alike."  *City of Cleburne v. Cleburne living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  This protection applies to prison inmates.  *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004).  The first step in an equal protection case is determining whether a plaintiff has demonstrated that he was treated differently than others who were similarly situated to him.  *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994)  Absent a showing that he is similarly situated to those who allegedly receive favorable treatment, a plaintiff does not

have a viable equal-protection claim.  *See id.*  The plaintiff must also show intentional or purposeful discrimination.  *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003); *see Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987) ("Proof of discriminatory racial purpose is required to establish an equal protection violation; an official act is not unconstitutional solely because it has a racially disproportionate impact.").  And, if the plaintiff does not show that a fundamental right is involved or that he is a member of a protected class, then courts apply a rational-basis review, asking whether the regulation is rationally related to a legitimate state interest.  *City of Cleburne*, 473 U.S. at 440.  Courts will employ a heightened review when a statue classifies by race, alienage, national origin or gender or impinges on a personal right protected by the Constitution.  *Id.* at 440-42.

Viewing the facts in the light most favorable to Plaintiff, this Court concludes that no reasonable fact-finder could conclude that Defendants' denial of *DeBahJiMon* violated Plaintiff's rights under the Equal Protection Clause. First, the evidence in the record could not permit a reasonable fact-finder to conclude that Defendants treated Plaintiff differently from individuals who are similarly situated to him.  There is no evidence that either Defendant provides *DeBahJiMon* to any other inmates in segregation.  Nor is there any evidence that these librarians fulfill requests for other inmates in segregation with other publications that the DOC has determined are not allowed in segregation.

Because there is no genuine fact dispute regarding whether Defendants treat Plaintiff differently than any similarly situated inmates, Plaintiff's equal-protection claim must fail.

Second, no facts in the record could permit a reasonable jury to conclude that Defendants had a racial motivation to deny Plaintiff access to *DeBahJiMon.* Although, "[a]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact . . . that the challenged conduct bears more heavily upon one race than another," *Inmates of Arlington Corr. Complex v. Greenholtz*, 567 F.2d 1368, 1375 (8th Cir. 1977), the totality of the relevant facts in the present case, shows that the DOC policy at issue bears equally on all inmates in disciplinary segregation. Access to reading materials in disciplinary segregation is limited. Nothing in the record shows that DOC Policy 301.083 prevents a higher ratio of Native Americans from obtaining materials from the law library than other races. The fact that Defendant Thorson made arrangements for Plaintiff to receive *DeBahJiMon* through other means further undermines Plaintiff's claim because it demonstrates that she did not have a discriminatory purpose for denying the publication at all. In fact, it suggests the opposite—that Defendant Thorson made every effort to fulfill Plaintiff's request, but ultimately was not able to do so because *DeBahJiMon* simply is not the type of reading material inmates in segregation are allowed to possess. This Court finds that Defendants did not purposely discriminate against Plaintiff when they

denied him access to *DeBahJiMon* through the law library pursuant to their reasonable judgment and application of DOC policy.

Thus, because no reasonable fact-finder could find disparate treatment or discriminatory intent, no reasonable fact-finder could find a constitutional violation. Accordingly, this Court recommends that Defendants be granted summary judgment on Plaintiff's Equal Protection claim relating to the withholding of *DeBahJiMon*, and Plaintiff's summary-judgment motion with respect to the same be denied.

## IV.    Official-Capacity Claims

Plaintiff filed suit against Defendants in their official capacities as well. The Supreme Court has held that a suit against a government employee acting in his official capacity is equivalent to a suit against the state. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The Eleventh Amendment bars Plaintiff from receiving monetary damages for such official-capacity claims, but not from receiving prospective injunctive relief. *Nix v. Norman*, 879 F.2d 429, 432 (8th Cir. 1989). If Plaintiff can establish that Defendants violated one or more of his constitutional rights by taking action "pursuant to an unconstitutional governmental policy or custom," or that the individual had "final authority over the subject matter at issue and used that authority in an unconstitutional manner," he may obtain prospective injunctive relief. *Id.* at 433 (citing *Monnell v. New York City Dep't of Soc. Servs.*, 463 U.S. 658 (1978), and *Pembaur v. City of*

*Cincinnati*, 475 U.S. 469 (1986)).  As shown above, however, no reasonable juror could conclude that a violation of Plaintiff's rights under either the First Amendment or the Equal Protection Clause has occurred.  Nor has Plaintiff pointed to anything unconstitutional in any governmental policy or custom.  Because Plaintiff is unable to prove any constitutional violation that a prospective injunction might relieve, this Court finds that the Eleventh Amendment bars Plaintiff's claims against Defendants in their official capacities.

**V.      Plaintiff's Motion for the Appointment of Counsel**

On June 1, 2010, Plaintiff filed a Motion for the Appointment of Counsel (Doc. No. 45).  Plaintiff thereby asks this Court to appoint counsel to represent him in this case because he cannot afford to retain counsel himself, is in a maximum-security prison, is housed in administrative segregation for disciplinary violations, has demanded a jury trial, and because the parties and the Court would substantially benefit from the appointment of counsel.

*Pro se* litigants do not have a constitutional or statutory right to counsel in civil cases.  *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998).  Rather, the appointment of counsel is a matter of the court's discretion.  *Mosby v. Mabry*, 697 F.2d 213, 214 (8th Cir. 1982); *see also* 28 U.S.C. § 1915(e)(1) (stating that the court may "request an attorney to represent any person unable to afford counsel").  The standard for appointment of counsel in such cases is whether both petitioner and the court would substantially benefit from the assistance of

counsel. *Johnson v. Williams*, 788 F.2d 1319, 1322 (8th Cir. 1986); *see also Plummer v. Grimes*, 87 F.3d 1032, 1033 (8th Cir. 1996) ("A district court is to decide whether the plaintiff and the court will substantially benefit from the appointment of counsel[.]"). Among the factors the court should consider are "the factual complexity of the issues; the ability of an indigent to investigate the facts; the existence of conflicting testimony; the ability of an indigent to present his claim; and the complexity of the legal issues." *Nachtigall v. Class*, 48 F.3d 1076, 1081-82 (8th Cir. 1995).

After reviewing these factors, this Court finds that neither the facts nor the legal issues involved in this care are so complex as to warrant appointment of counsel. Although Plaintiff's lack of legal knowledge may present some disadvantages, in terms of the requisite time and effort that may be attendant to the presentation of his claim, this Court has taken that into account when it allowed Plaintiff the opportunity to amend his Complaint three times. In addition, Plaintiff has articulated his claims and argued his positions quite well, and has been able to communicate effectively with this Court. Therefore, this Court is satisfied that appointment of counsel would not substantially benefit the Court or Plaintiff. Accordingly, this Court recommends that Plaintiff's request be denied.

In addition this Court recommends that Plaintiff's request be denied because this Court has recommended that Defendants' motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

Should the District Court disagree with this Court's recommendation and allow some or all of Plaintiff's claims to proceed to trial, Plaintiff and the District Court may substantially benefit from the appointment of counsel at that time. Therefore, this Court recommends that Plaintiff should not be foreclosed from renewing his motion if such circumstances arise.

## CONCLUSION

The Court understands Plaintiff's frustration at not being able to obtain copies of the Leech Lake community newspaper while he is in disciplinary segregation. But the loss of that privilege is the result of DOC policies that curtail the reading privileges of prisoners in segregation. It is not the result of a deprivation of Plaintiff's Constitutional rights by the two law librarians whom Plaintiff has sued in this action. Indeed, the uncontested record demonstrates that the law librarians provide extraordinary service to the state prisoners, including Plaintiff. Librarians are typically—and these Defendants are no exception—devoted to expanding not diminishing access to information for those they serve. This Court knows how difficult it must be for the two librarian Defendants here—one of whom works only part-time—to face the prospect of defending themselves in a court action for hundreds of thousands of dollars in damages simply because they performed the important task of serving the prison population. Legal doctrines like qualified immunity are designed to alleviate such risk. Hopefully, this experience will not chill the obvious sense of dedication and

professionalism these law librarians bring to the justice system.

## RECOMMENDATION

Based on the above, and on all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Defendants' Motion for Summary Judgment (Doc. No. 36), be

**GRANTED**;

2.  Plaintiff's Motion for Summary Judgment (Doc. No. 43), be **DENIED**;

3.  Plaintiff's Motion for the Appointment of Counsel (Doc. No. 45), be

**DENIED**; and

4.  This case be **DISMISSED WITH PREJUDICE**.


Date:  July 28, 2010

_s/ Jeffrey J. Keyes_
JEFFREY J. KEYES
United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 11, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.